## Den *ex dem.* Jouet *against* Watkins.

A mortgage deed, though not recorded within the time prescribed by the act of assembly, is admissible in evidence; the objection goes to its legal effect.

Will the interest in a mortgage pass by a conveyance of personal estate? *Query.*

This was a motion to set aside a non-suit, and grant a new trial.

An action of ejectment had been brought upon a deed of mortgage, dated June 1, 1776, to secure a debt of £200, but the mortgage was not recorded until January 4, 1796. After the execution of the mortgage to Cavalier Jouet, the mortgagee joined the armies of the enemy, and judgment was had against him for treason in January term, 1779, whereby all his property became forfeited to the state of of New Jersey. Some of this estate was sold for the benefit of the state, and on the 12th of March, 1796, an act of the legislature was passed, vesting all the residue and remainder of the estate which was undisposed of in the daughters of Jouet, by whom this action was brought on the mortgage to their father.

On the trial of the cause at the Essex *Nisi Prius*, in October, 1796, before Smith, J., and Chetwood, J., the plaintiff offered in evidence the mortgage deed to C. Jouet. The defendant insisted that he was a *bona fide* purchaser of the estate, and that the mortgage not being recorded pursuant to the directions of the act of November 14, 1786, was void, and the court being of this opinion rejected the evidence. The plaintiff in consequence suffered a non-suit, and now moved the court to take it off and grant a new trial.

*I. H. Williamson, A. Ogden* and *R. Stockton* for the plaintiff.

*M. Williamson,* for defendant.

*For the plaintiff.* The court were wrong in refusing to permit this evidence to go to the jury. Even if the fact that the defendant was a *bona fide* purchaser, had been proved beyond a doubt, it furnished no sufficient reason for rejecting the evidence. Unless the mortgage was absolutely void, it ought to have been admitted ; but upon the very statement of the defendant's case, it might nevertheless have been perfectly good. 1. Against the mortgagor himself. 2. If the defendant purchased subsequent to the recording of the deed. 3. If he was conusant of the mortgage at the time of his purchase. These were all facts which the plaintiff had a right to demand should be determined by a jury, and not in a summary manner by the court, on a motion collateral to the merits of the case.

The object of the act was exclusively to protect honest and *bona fide* purchasers, and resembles in some respects the registering act of 7 *An. c.* 20, upon which the same construction has always been given. In *Cheval* v. *Nichols*, 1 *Str.* 664, it was held that this statute was designed to protect against fraudulent sales, subject to concealed prior incumbrances, and, therefore, it did not relieve against an incumbrance, though not registered, if it was known to the purchaser. The same doctrine was held in *Doe* v. *Routledge, Cowp.* 705, and by Lord Hardwicke, (3 *Atk.* 651,) in the case of *Le Neve* v. *Le Neve.* The same principle has been adopted in this state, in the construction of the act of assembly, which provides for the recording of surveys. *Allinson* 51. *Note.*

But there was no necessity for the enrollment or recording of this mortgage deed. The estate of Jouet, the mortgagee, became vested in the state in 1779, and the act in question was not passed until 1786. Statutes of this kind, impairing existing rights, and prescribing a more limited line of conduct, do not affect the sovereignty of the state or impose rules for its exercise. Acts of parliament are never extended to persons or things superior in rank to those which are

expressly named. 1 *Bl. Com.* 88. Nor is the king, who in that respect represents the national sovereignty and dignity, bound by any act of parliament, unless named therein by special and particular words. *Ib.* 261, *Wood's Inst.* 21. Neither, under our system of government, can provisions of this kind be held to extend to the state. *Allen* v. *Hoyt, Kirby* 227.

The plaintiff, deriving his title from the state, is vested with its rights, and entitled to the benefit of all its prerogatives. The act of assembly confirms to the lessor of the plaintiff all the right of the state to the land in question; if, therefore, the defendant, at that time, would not be admitted to hold in opposition to the title then in the state, he cannot be permitted to set up the same defence against us.

It may be objected, however, that the legislature have only granted to the lessor of the plaintiff the personal estate which remained undisposed of. A mortgage, however, is but personal property. *Powell on Mort.* 14–15. It is evidence of a debt. *Ib.* 106. It goes to the executor and administrator. *Ib.* 298–9; 2 *Bur.* 978; *Green* v. *Hart,* 1 *John.* 580. The act, therefore, passing the debt, the security is transferred.

This non-suit ought to be set aside without costs, it having been submitted to by the plaintiff, in consequence of an erroneous judgment of the court, which destroyed his action. *Pochin* v. *Pawley,* 1 *Bl. Rep.* 670; *Buscall* v. *Hogg,* 3 *Wils.* 146.

*For the defendant.* This action is brought in the name of the original mortgagee, C. Jouet, for the benefit of his daughters, in whom the residue of the personal estate of their father was vested by an act of assembly.

The recording act was passed in 1786, since which period no mortgage is admissible in evidence, or can have any legal operation, unless under particular circumstances, without it has been recorded within the time limited by the act. The

defendant is not the mortgagor, and therefore it was incumbent upon the plaintiff to lay some ground for the introduction of this evidence, to bring himself within the exceptions which the act itself allows, or which have been created by judicial construction. Whether he does come within the exemption, is at this time perfectly immaterial, it is sufficient that it was not made to appear to the court, at the time the evidence was offered.

With regard, however, to the grounds upon which this exemptions from the operations of statute is claimed, it has been contended, that, as the plaintiff claims under the state, he is entitled to all the privileges which are necessarily connected with the sovereignty of the community. Exemptions of this kind, always odious, are particularly so in a republic, where it is the duty of every ruler to bear constantly in mind, that he is assisting in the administration of a government of laws, equally operating upon the high and the low, the magistrate and the citizen. But this prerogative is now pushed to an extent beyond what was thought reconcileable to the ideas of English liberty, during the reign of James I., at which period the privilege was considered as personal. 7 *Co.* 23–4. So far from there being any authority to warrant the doctrine, that a private individual, who claims under the king, is entitled to all the exemptions and priviliges annexed to the royal person, it would be more rational to say, that when the king derives a title to land from a private person, and claims through him, he is so far divested of his prerogative, and is considered as standing in the predicament of the person from whom his rights are derived.

It is also necessary, whenever a claim is preferred for the benefit of the king's prerogative, that the interest of the king should appear on the record. One must sue *nomine regis*, otherwise he shall not avail himself of the prerogative. *Bro. Abr. tit. Prerog. pl.* 68; 1 *P. Wms.* 252–3; *Gilb. W.* 37.

The action of ejectment is a mixed action, and though the debt may be personal, yet as the only property transferred by the act was personal, the claim upon the real property was not included. It is absurd, at the very time that an action is brought to recover real estate, to say, that the plaintiff has no right to any thing that is not personal. The metaphysical distinctions that may be drawn between the substance and its inseparable concomitants, afford no rule by which the decisions of a court of judicature can be governed : the fact, that under this assignment an attempt is made to claim real property, shews that they consider it as transferring rights to other than the personality.

*In reply.* It is an established rule of law, that every instrument under seal is admissible in evidence, provided it relates to the subject in controversy, and is one of the foundations, or the muniments of title in either of the parties. It is a question for the consideration of the court, what effect or operation is to be allowed it ; this is entirely independent of its admissibility. 6 *Mod.* 45. (See 1 *Dal.* 64, 69 ; 1 *Bin.* 190 ; *Faulkner* v. *Lessee of Eddy.*) On this principle, the mortgage ought to have been admitted in evidence, unless the act of assembly rendered it an absolute nullity.

Independent of all questions connected with royal prerogative and privilege, the case appears to depend entirely upon the meaning that is to be given to the recording act.

According to our understanding of this act, it does not in the slightest degree bear upon the present case. The legislature intended to regulate the common dealings between man and man. Instances were by no means uncommon in which honest purchasers had been deprived of their rights, or subsequent mortgagees had lost their debts in consequence of the bringing forward either real or fictitious claims of an earlier date, which absorbed all the funds upon the faith of which credit had been given. It was to guard against concealments of this kind, which whether actually

or constructively fraudulent were equally injurious, that this act was passed. Could it have been presumed that the government would have committed actual fraud, or can laches or inattention, which, in the case of individuals, amount to legal fraud, be attributed to the state? The treasurer of the state is not required to record the mortgages that are made to him. Incumbrances of this kind are of so public a nature, or so few in number, that any legislative provisions with regard to them would be altogether superfluous.

*Per Curiam.* The evidence was admissible upon the authority of the case of *Ford* v. *Lord Erey,* 6 *Mod.* 44. The mortgage ought to have been received, and if it was rendered of no validity by any matter *dehors,* such circumstances should have been made to appear to the court, by way of defence against the claim set up under it. In refusing to hear it, the court then did wrong, and a new trial must be granted.

The court, in answer to an inquiry of Mr. Ogden, intimated their opinion, that the mortgage was not void, because it was not recorded.

New trial granted.

NOTE.—The court do not take any notice of one question which was argued, *viz:* whether the interest of a mortgagee in a mortgage is to be considered as personal estate though indirectly they seem to have decided, that it was to be regarded in that light. In *Hassel* v. *Tynte, Ambl.* 318, Lord Hardwicke said, that it was a question upon which he felt very unwilling to give an opinion. His words are, " what has been argued at bar is very true, that the money is the principal, and the land only the security; that the money would pass by will not attested according to the statute; and yet here is an interest in land, and it is a very considerable question, whether it can pass by parol gift?"

The question was reserved. *Fonblanque b.* 3, *c.* 1, *s.* 13, considers it as personal property, and in the same light it seems to be regarded by Lord Mansfield, in *Martin* v. *Mowlin,* 2 *Bur.* 969 ; recognized in *Green* v. *Hart,* 1 *John.* 583; 1 *Caine Ca. Er.* 69, *Waters* v. *Stewart.* But see *Noys* v. *Mordaunt,* 2 *Vern.* 581 ; *Doe* v. *Parratt,* 5 *Term Rep.* 652, which shew, that in certain cases it is looked upon as real property. See also *Perry* v. *Barker,* 13 *Ves. jun.* 198, and *Den ex dem. Jouet* v. *Spinning Post,* 3 *John. Ch. Ca.* 145 ; 11 *John.* 538.